

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

MJF:TDK
F.#2008R01116

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 8, 2009

By ECF and Fax

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Karseem Wilson
           Criminal Docket No. 08 Cr. 444 (FB)

Dear Judge Block:

      The defendant in the above-referenced case, Karseem Wilson, is scheduled to be sentenced on April 17, 2009.  On October 6, 2008, the defendant pleaded guilty to an indictment charging him with possessing a firearm and ammunition after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).  The Presentence Investigation Report ("PSR") indicates that the defendant's Guidelines range results in a total adjusted offense level of 17 and a criminal history category of III, with a corresponding range of imprisonment of 30 to 37 months.  PSR ¶ 112.  The government agrees with the PSR's Guidelines calculation and respectfully submits this letter in opposition to the defendant's letter dated March 23, 2009 ("Def. Letter"), asking the Court to issue a non-Guidelines sentence.  For the reasons stated below, the defendant should be sentenced at the upper-end of the Guidelines range.

I.    Factual Background

      On the evening of May 23, 2008, two New York City Police Department ("NYPD") officers responded to the Ravenswood Housing Development in Astoria, Queens after a shooting was reported to have occurred there a short time earlier.  PSR ¶ 3.  While canvassing the area, the officers observed the defendant walking down the street while shielding the right side of his body from view.  Id.  The officers called out to the defendant and requested that he stop to speak with them.  At that point, the defendant fled, and ran into an apartment building located at 12-20 34th

2

Avenue.  PSR ¶ 4.  Both officers pursued the defendant into the apartment building, where one of the officers observed the defendant drop a firearm to the floor.  Id.  The second officer apprehended the defendant moments later.  PSR ¶ 5.  The NYPD officers retrieved a loaded .38 caliber handgun from the place where the defendant was observed to have dropped it.  Later, the officers recovered video surveillance footage from the building's security system which captured the defendant running with and discarding the firearm.[1]  Id.

II. A Sentence Within the Advisory Guidelines Range is Appropriate

The defendant suggests that a non-Guidelines sentence is warranted based on his unique circumstances, including his dedication to reform and the hardships he faced as a child.  Def. Letter at 7.  In an effort to gain the sympathy of the Court, the defendant provides a litany of excuses to explain the instant offense.  The defendant also requests that the Court find fault with Probation's Guidelines calculation, both in terms of his criminal history category and offense level.  The defendant's arguments in support of these points, however, pay little consideration to the seriousness of the instant offense and ignore a pattern of dangerous and unproductive behavior that is likely to continue if left unchecked.  The government respectfully submits that a downward departure is not warranted, and further argues that a sentence at the upper-end of the advisory Guidelines range is appropriate.

    A. The Defendant's Personal Childhood Circumstances do Not Warrant a Non-Guidelines Sentence

In urging the Court to disregard the recommended sentence, the defendant argues that the circumstances of his childhood are to blame for his current situation.  Def. Letter at 13-21.  However, sentencing judges are not free to "treat [the Guidelines] merely as a "body of casual advice." United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008).  Courts are instructed to consider both the Guidelines sentence and "any pertinent policy statement" issued by the Sentencing Commission pursuant to its statutory authority.  18 U.S.C. 3553(a)(4)-(5).  The Guidelines policy statements expressly prohibit "lack of guidance as a youth" as grounds for departure,  U.S.S.G. §§ 5K2.0(d)(1), 5H1.12, and discourage departure based on the mental and emotional conditions of the defendant resulting from childhood circumstances, U.S.S.G.

---

[1] There is no evidence linking the defendant to the shooting that the officers were investigating.

3

§§ 5K2.0(a)(4), 5H1.3. The Supreme Court has confirmed that when considering a "discouraged factor[2] . . . the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Koon, 518 U.S. at 96.

To warrant such a departure, the Second Circuit has continued to require a showing of exceptional hardship, holding that "in extraordinary circumstances . . . district courts may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense," and that the abuse must "r[i]se to the extraordinary level that can be assumed to cause mental or emotional pathology." United States v. Rivera, 192 F.3d 81, 85-86 (2d Cir. 1999). The defendant's situation, while regrettable, is hardly unique in light of the circumstances that other similar offenders tend to experience. See, e.g. United States v. Kim, 313 F.Supp.2d 295 (S.D.N.Y. 2004) (disallowing departure based on sexual abuse and abandonment, noting that abuse suffered by the defendant was not atypical of persons who commit crimes). Unfortunately, far too many a defendant was raised in a single-parent home, witnessed domestic abuse and lived in a troubled community. Yet, these circumstances cannot be allowed to excuse dangerous behavior and sanction the possession of firearms.

B. <u>Juvenile Convictions of the Defendant are Properly Considered for Sentencing</u>

The defendant further argues that the Court should not take into consideration his prior convictions because they occurred when he was young and immature and do not reflect the person he is today. Def. Letter at 10. One of the convictions the defendant asks the Court to disregard is his adult conviction for carrying a loaded handgun. This argument, however, is completely contrary to the express instructions of the Guidelines. See U.S.S.G. §§ 4A1.1(a), 4A1.2(d)(1).[3] Moreover, in order to "afford adequate

---

[2] A discouraged factor is one "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range," an example of which is the defendant's mental and emotional condition. United States v. Koon, 518 U.S. 81, 96 (1996) (citing U.S.S.G. ch. 5, pt. H, introductory cmt.).

[3] U.S.S.G. §§ 4A1.1(a), 4A1.2(d)(1) states that offenses committed prior to the age of 18 should be counted in the

4

deterrence" and "protect the public from further crimes of the defendant," the defendant's prior criminal record must be considered as direct evidence of his potential for recidivism. 18 U.S.C. § 3553(a)(2)(B),(C). The purpose of considering these prior convictions (especially the firearm possession conviction) is not to pass judgment on the culpability of the defendant at the time of his prior conduct, but rather to determine his likelihood for recidivism and the potential threat he poses to the community. Our society has chosen to afford special treatment to juveniles, recognizing that youthful offenders have the potential for rehabilitation. However, "when yesterday's juvenile delinquent becomes today's adult criminal, the reasons behind society's earlier forbearance disappear." United States v. Johnson, 28 F.3d 151, 155 (D.C. Cir. 1994).

### C.  The Defendant Has a High Potential for Recidivism and Has Yet to Demonstrate His Sincere Desire to Reform

Over the past 15 years, the defendant has solidified his status as a habitual offender with a high risk of engaging in future criminal conduct. Despite the numerous second-chances afforded to the defendant, including non-custodial sentences and allowing him to relocate to a different area of the county, the defendant repeatedly broke the law - a pattern that has continued until today. Although the government does not seek an upward departure, upward departures have been imposed where the defendant, as in this case, exhibited "obvious incorrigibility" in the face of judicial leniency. United States v. Levi, 229 F.3d 677, 679 (8th Cir. 2000) (affirming upward departure from criminal history category I to IV where repeated violations demonstrated defendant's disrespect for the law and that leniency has not been effective) (citations omitted). Upward departures are also warranted pursuant to U.S.S.G. § 4A1.3(a) where the criminal history category under-represents the defendant's prior criminal activity or his potential for recidivism. See United States v. Fogg, 409 F.3d 1022, 1026-27 (8th Cir. 2005) (affirming upward departure when convictions for petty theft and driving without a license were not included in the criminal history category, but indicative of a high likelihood to commit other crimes) (citing 18 U.S.C. §§ 3553(a)(1), (2)). A brief look at the defendant's criminal history will show that he has benefitted from the leniency of courts on several occasions, but each time has failed to demonstrate his commitment to reform.

---

defendant's criminal history category "if the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month." The PSR correctly includes his prior weapons offense. PSR ¶ 26.

The defendant's first offense occurred when he attempted to sell cocaine to an undercover officer. He pleaded guilty to Attempted Criminal Sale of a Controlled Substance and received five years probation. PSR ¶ 20. His probation was revoked less than a year later when he was arrested for the attempted sale of crack to another undercover officer. PSR ¶ 24. For that charge, he pleaded guilty to Attempted Criminal Sale of a Controlled Substance and was sentenced to six months imprisonment and five years probation. PSR ¶ 23. His probationary period again ended abruptly less than a year later when he was found in possession of a .38 caliber semi-automatic handgun at the Port Authority Bus Terminal. PSR ¶ 27. Following that offense, he was sentenced to three years custody in April 1995. He was paroled in September 1996 but arrested four months later in January 1997 for selling cocaine to undercover agents. PSR ¶¶ 26, 28. At this point, the defendant was 19 years old. PSR ¶ 30. Since that time he has experienced difficulty adjusting, violated the terms of his parole on several occasions, and was charged with Driving without a License in 2003 and Malicious Injury to Property in 2007. PSR ¶ 32, 34, 36.

For all of the above criminal conduct, the defendant received only 6 criminal history points. The defendant received no points for his first two narcotics offenses, for driving without a license or for willfully damaging another's property. While the government concedes that the defendant should not receive criminal history points for any of these offenses, they remain indicative of the defendant's propensity to commit crime and also belie the defendant's argument that Probation's calculations are unfair.

Most importantly, the defendant's prior conviction for possessing a firearm evidences the fact that the defendant has a propensity for possessing deadly weapons. The fact that he had been punished for this very crime previously but still felt the need to carry a loaded gun makes this a case that cries out for specific deterrence. See <u>United States v. Ewing</u>, 129 F.3d 430 (7th Cir. 1997) ("A defendant who has been convicted for same offense more than once has demonstrated a need for greater sanctions to deter him or her from committing same crime.").

The defendant also argues that the PSR does not take into account the fact that he is a changed man. Def. Letter at 22-23. But the defendant refuses to recognize that his instant behavior constitutes a serious crime that poses a real danger to the community. The defendant was found walking through an apartment complex filled with families with a loaded firearm, the sole use of which is to harm or kill others. At 17 or 18 years old, perhaps such an act can be called "foolish." But at 31 years old, one can only wonder what the defendant was doing with this loaded gun. This is not a case where he was protecting his home or family or was the subject of threats. Contra <u>United States v. Williams</u>, 432

F.3d 621, 623 (6th Cir. 2005) (court departed in part because the defendant had received threats and was carrying the weapon under "extenuating circumstances"). Instead, the defendant was the one threatening the community. These hardly seem like the acts of a changed man. This is the same exact crime to which he pleaded guilty over ten years ago. In addition, the defendant has a poor track record with the chances he has been given. Each time the defendant was released from custody in the past, he had difficulty adjusting to the terms of his probation. PSR ¶¶ 22, 28, 32.[4]

III. Conclusion

          The multitude of excuses the defendant makes for his dangerous behavior should not alleviate him of his responsibility to act as a law-abiding citizen. Moreover, the defendant's history gives the government little confidence in his ability to change as claimed. While the outpouring of support from family members evidenced in the defendant's letter is encouraging, it does not overshadow the need for a sentence that "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "afford[s] adequate deterrence to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C). Given the serious nature of the crime to which the defendant pleaded guilty and his demonstrated resistance to reform in the face of multiple convictions, a period of incarceration at the upper-end of the Guidelines range is appropriate.

                                  Respectfully submitted,

                                  BENTON J. CAMPBELL
                                  United States Attorney

By:       /s
              Todd Kaminsky
              Assistant U.S. Attorney
              (718) 254-6367

cc:  Erik B. Levin, Esq.
     Lindsay Maza, U.S. Probation

---

[4] For example, while on parole from his most recent narcotics offense, the defendant was granted approval to relocate to South Carolina. There, he repeatedly refused to report and changed residence on multiple occasions without the approval of his parole officer, resulting in his ordered return to New York.